CITY OF HOBOKEN *v.* PENNSYLVANIA R. Co. and others.*

(*Circuit Court, D. New Jersey.* May 24, 1883.)

1. EJECTMENT — RIPARIAN RIGHTS — DEDICATION OF STREETS — RIGHT OF THE STATE IN LANDS LYING BELOW HIGH-WATER MARK.

Where a proprietor of land bordering upon a navigable river dedicated a portion of such lands to a town for the purposes of public highways, and the same was delineated on a map as extending to the high-water mark of the river, as it existed at the time of the grant, *held*, that no part of the land or water adjoining said lands, and lying below high-water mark, as it then existed, passed to the town or was made subject to any easement by any such dedication or grant, since all such land lying below high-water mark belongs to the state, and could only be dedicated or subjected to an easement by the state or its grantees.

2. SAME — ALLUVION OR ACCRETION — LAND REDEEMED BY "FILLING IN."

Soil acquired and redeemed from the water by filling in is in no sense alluvion or accretion which would become the property of the shore-owner, but is

*Affirmed. See 3 Sup. Ct. Rep. 643.

the property of the state or its grantees, in whom the title to the land between high and low water mark is; and no right exists in the shore-owner, who has dedicated to the public streets to the limit of his ownership, to charge such newly-made land with the burden of an easement over it.

Actions for Ejectment.

*Malcolm W. Nevin*, with whom was *John C. Besson* and *G. N. Mc-Carter*, of counsel, for plaintiff.

*Leon Abbett* and *Jas. B. Vredenburgh*, with whom was *Ex-Gov. Bedle* and *Barker Gummere*, for defendants.

Nixon, J.    The mayor and council of the city of Hoboken brought six several suits in ejectment in the supreme court of New Jersey against the owners of land on the Hudson river in front of said city, involving the right of the city to extend Newark street, First, Second, Third, and River streets over said land to the river front, without making compensation in damages for such extension.    These suits were removed into this court by the several defendants, and, by stipulation between the counsel of the respective parties, have been tried by the court without the intervention of a jury.    The claim of the plaintiff is for an easement, and is based upon the dedication of certain streets in the year 1804 by Col. John Stevens, who was then the owner of between 500 and 600 acres of land on the western shore of the Hudson river, where the city of Hoboken now stands, and who made "A Plan of the New City of Hoboken, in the County of Bergen," and caused the same to be filed in the clerk's office of said county in the month of April, 1805.    This plan, on the map known as the Loss map, exhibits a number of streets running north and south, and a still larger number running east and west; all of the latter, except one, apparently terminating on the river front at their eastern end, and one of the former having a like terminus on the south.    Since that date, and by legislative authority, the river bed below the ancient high-water mark has been filled in for a long distance to the east and south of the land included in the Loss map, rendering the navigable water inaccessible from the streets, as therein laid out and dedicated.    This controversy has reference to extending one of these streets, not named on the map, but now called River street, to the south, and four others, to-wit, Newark street, designated on the map the Philadelphia Post-road, and First, Second, and Third streets, to to the east, until they respectively reach the navigable water of the river.    The city claims the right of extension by virtue and force of the Stevens dedication.    The defendants resist it, asserting that the

title of Col. Stevens was limited to high-water mark of the river in 1804; that the soil below the high-water mark, as it then existed, belonged to the state of New Jersey, which not only has never acquiesced in any easement over the land, but by various enactments has conferred upon the defendants or their grantors an absolute title inconsistent with any right of way in the public over the same. I find as questions of fact in the case:

(1) That the tract of land on which the city of Hoboken has been mainly built was formerly the property of Col. John Stevens, and contained originally five hundred and sixty-four acres.

(2) That in the year 1804 Col. Stevens, then being the owner of said tract, caused to be made "A Plan of the New City of Hoboken, in the County of Bergen," known as Loss' map, which was filed in the clerk's office of the county of Bergen in April, 1805.

(3) That the public streets laid out on said map, running east and west, extended eastwardly to the high-water mark of Hudson river, as it then existed.

(4) That the only street thereon, running north and south, which concerns the present controversy, is now called River street, and its southerly terminus, on the map, was at the high-water mark of said river.

(5) That subsequent to the filing of said map Col. Stevens conveyed several lots or parcels of the land shown thereon to different persons, and described the lots so conveyed by reference to the map and the streets delineated thereon, and that other owners, deriving title from or under him, have since conveyed lots within said plan, describing the same by reference to the map and streets.

(6) That at the time of the filing of said map in the clerk's office the title to all the land fronting the said Stevens property, and lying between high and low-water mark of the west bank of the Hudson river, was in the state of New Jersey.

(7) That "The Hoboken Land & Improvement Company" was incorporated by the legislature of said state by an act entitled "An act to incorporate the Hoboken Land & Improvement Company," approved February 21, 1838; that by section 1 of the act they were authorized to hold real estate, but the amount held by the company should not exceed 1,000 acres at any time; that by the fourth section the company was empowered to purchase, fill up, occupy, possess, and enjoy all land covered with water fronting and adjoining the lands that might be owned by them, and to construct thereon wharves, piers, and slips, and all other structures requisite or proper for commercial and shipping purposes, provided that it should not be lawful for the company to fill up any such land covered with water, nor to construct any dock, pier, or wharf immediately in front of the lands of any other person or persons owning down to the water, without the consent of such persons first had in writing.

(8) That by virtue of the powers and privileges of said act of incorporation the company purchased all the land and real estate described in the deed of conveyance from Edwin A. Stevens and others, bearing date May 6, 1839, and

duly recorded in the clerk's office of the county of Bergen in Liber 13 of Deeds, fol. 105; and in which, among other land, is included the tract of 564 acres embraced in the Loss map, and formerly the property of Col. Stevens.

(9) That at the time of said transfer by Edwin A. Stevens and others to the said Hoboken Company, the land for which these suits were brought by the city of Hoboken was under water, and since the date of said conveyance has been filled up, occupied, and possessed by said company or their grantees; and that all of said land under water was in front of and adjoining the real estate purchased by the company; that since the time of said purchase the company, or their grantees, have at various times reclaimed the land from the water, and have constructed thereon wharves, harbors, piers, and slips, and other structures requisite or proper for commercial purposes, and have been in the exclusive possession, occupancy, and enjoyment of the same from the time of such reclamation.

(10) That the city of Hoboken was incorporated by the legislature of the state of New Jersey, by an act approved March 28, 1855, with the powers and privileges therein granted, *pro ut* the same, and that the territorial limits of the said city embraced all the lands shown on the Loss map, and also a large tract of real estate adjoining the same on the west, extending to the west line of lands of the late John G. Costar, deceased, and that previous to said incorporation its territory embraced [a portion of] one of the townships of the county of Hudson.

(11) That the city of Hoboken never by ordinance recognized River street, south of Third street, and only recognized its existence as far south as Third street, by the ordinance of January 9, 1858; that Newark, First, and Second streets were never recognized by ordinance east of Hudson street prior to the ordinance of October 5, 1875, which ordinance provided that said streets should extend to high-water mark on the Hudson river; and that Third street was never recognized east of River street prior to the said ordinance of October 5, 1875, which ordinance also provided that said street should extend to high-water mark of said river.

(12) That no proceedings have been taken by the city to condemn the lands in controversy, or to take them for the purposes of a public street, except the passage of the ordinance of 1875, and the bringing of these actions of ejectment, claiming the dedication of the lands as a public street under the Loss map of 1804.

(13) That the Hoboken Land & Improvement Company, in consideration of $68,583.33, executed a deed to the Camden & Amboy Railroad Company, dated December 1, 1864, conveying a tract of land at the foot or easterly end of Second street, within the boundaries of which are embraced the premises that the plaintiff seeks to recover in the two suits against the Pennsylvania Railroad Company, and that the Camden & Amboy Railroad Company, and its grantees or lessees, have been in the possession of said lands since said conveyance.

(14) That the legislature of the state of New Jersey, by a law approved March 31, 1869, authorized the united railroad companies of New Jersey to reclaim, and erect wharves and other improvements in front of, any lands then owned by them, or held in trust for them, on any tide-waters of the state,

and, when so reclaimed and improved, to have, hold, possess, and enjoy the same as the owners thereof, subject only to the provisions that they should pay for such grant into the treasury of the state the sum of $20,000 before the first day of July next ensuing, and should also file in the office of the secretary of the state a map and description of the lands under water in front of the upland designated in said act; that the sum of $20,000 was paid by the companies within the time limited, and the map and description filed as required. Exhibit D 9.

(15) That an act of the legislature of New Jersey, supplementary to the act to ascertain the rights of the state and of riparian owners in the lands lying under water, approved April 11, 1864, was passed on the thirty-first of March, 1869; that by a proviso to the third section of the same, "all previous grants of land under water, or right to reclaim, made directly by legislative act, or grant or license, power or authority, so made or given, to purchase, fill up, occupy, possess, and enjoy lands covered with water fronting or adjoining lands owned by the corporation, grantee, or licensee named in the legislative act mentioned, its, his, or their representatives, grantees, or assigns," are excepted from the operation of said supplement; that in the fourth section of said act the riparian commissioners are authorized, for the consideration therein mentioned, to execute and deliver, in the name of the state of New Jersey, to all persons coming within the terms of said proviso, a paper capable of being acknowledged and recorded, conveying and confirming to them the title to all lands, whether then under water or not, which were held by previous legislative grant or lease, either in the hands of the grantees or lessees, or by their representatives or assigns.

(16) That under the provisions of said act the state of New Jersey conveyed to the Hoboken Land & Improvement Company, by deed dated December 21, 1869, for the consideration of $35,500, so much of the land and premises purchased of Edwin A. Stevens and others as was originally below the high-water mark of the river, and all lands under water in front of the same, and as was situate between Second and Fourth streets, if extended, and in front of Third street, if extended, to the exterior bulk-head and pier lines established by the riparian commissioners, and embracing the premises claimed in the several suits against the Hamburg-American Steam-packet Company and the North German Lloyd Steam-ship Company, and that the said company and its grantees have been in the possession of said premises since the date of said conveyance.

(17) That on the twenty-sixth of September, 1866, the Hoboken Land & Improvement Company and Edwin A. Stevens executed a conveyance to the New York Floating Dry-dock Company for certain lots and tracts of land, above and under water, in front of and to the east of First street, and the northerly half of Newark street, if extended, embracing the premises claimed in the suits against Adolph E. Schmidt and others; that the said the New York Floating Dry-dock Company transferred the same to Frederick Kuhne, trustee of the German Transatlantic Steam Navigation Company, by deed dated August 31, 1872,—the said Kuhne, on the same day, executing a formal declaration of trust to the said company; that on the ninth of November, 1872, the state of New Jersey, in consideration of $22,625, granted and con-

veyed to said Kuhne, trustee as aforesaid, all the right and title of said state in and to the land and premises described in the above-recited deed from the Hoboken Land & Improvement Company to the New York Floating Dry-dock Company, and that the same has been in the possession of the said respective grantees from the date of the respective conveyances.

(18) That on the twenty-third of April, 1872, the Hoboken Land & Improvement Company made a conveyance to the North German Lloyd Steamship Company of a lot of land situate in front of and to the east of Third street, if continued to the Hudson river, and embracing the premises claimed in the several suits against the North German Lloyd Steam-ship Company and the Hamburg-American Packet Company, and the premises have been in the possession of said company and its lessees since the date of said conveyance.

(19) That River street, as shown on the Loss map, cannot be extended to reach the navigable waters of the Hudson river without crossing land outside of that shown on said map, and without crossing land which, prior to April 28, 1874, belonged to the state of New Jersey, and which the said state, by deed of that date, leased in perpetuity to the Morris & Essex Railroad Company. See Exhibit D 8.

## From these facts I find as conclusions of law:

(1) That neither Col. John Stevens, in 1804, nor at any time thereafter, nor his grantees of any portion of the land delineated on the Loss map, had power to dedicate to the public use, as a highway, any part of the land or water adjoining said lands, and lying east of and below high-water mark of the river, as it then existed; and that said land under water belonged to the state of New Jersey, and could only be dedicated or subjected to an easement by the state and its grantees.

(2) That the charter granted by the state of New Jersey to the Hoboken Land & Improvement Company was a contract between the state and the corporators; that the fourth section expressly authorized the corporation to fill up all lands covered with water fronting and adjoining the lands they might acquire, and to construct thereon wharves, harbors, piers, and slips, and all other structures requisite or proper for commercial or shipping purposes; and that the only restriction imposed upon the corporation by the act, was that it should not fill up or build any dock, pier, or wharf upon any land under water " immediately in front of the lands of any other person or persons owning down to the water;" and that neither the plaintiff in these suits, nor the state of New Jersey, nor the public, was "another person, owning down to the water," within the legal meaning and intent of said charter or contract.

(3) That the provisions of the charter of incorporation of the plaintiff, so far as they are applicable to the subject of the pending controversy, negative the plaintiff's construction of its powers under said charter, in that (1) it withholds from the corporate authorities any right or privilege as shore or riparian owners; (2) while it vests the council with power to take any lands that it may judge necessary for the opening of Third street, it requires payment to be made to the owner for the fair value of the lands so taken and of

the improvements thereon, and the damage done to any distinct lot or parcel or tenement by taking any part of it for such purpose; and (3) it expressly provides that nothing contained in the charter shall be construed to interfere with or impair the vested rights and privileges of any person or corporation whatever, except as to property taken for public use, upon compensation as provided for in the act.

(4) That the state of New Jersey, being the absolute owner of the land under water below high-water mark, which was the limit of the Stevens dedication of streets, had the right to fill in and make land as far as its ownership extended; that the soil thus acquired and redeemed from the water was in no sense alluvion or accretion, which became the property of the shore-owner, but remained the land of the state or its grantees; and that no right or authority existed in the shore-owner, by dedicating to the public streets to the limits of his ownership, to charge such newly-made land with the burden of an easement over it.

(5) That as to the two several suits against the Pennsylvania Railroad Company the *locus in quo* is embraced within the descriptions of the deed from the Hoboken Land & Improvement Company to the Camden & Amboy Railroad Company, dated December 6, 1864, and also within the grant of the state to the united railroad companies of New Jersey of the date of March 31, 1869, wherein the said companies were authorized, for the consideration therein expressed and afterwards paid, "to reclaim and erect wharves and other improvements in front of any lands owned by or held in trust for them," subject to no restriction other than the regulations as to solid filling and pier-lines before recommended by the riparian commissioners, and that the defendant, who is the lessee of the said companies, is entitled to hold said premises against the claim of the plaintiff, unless compensation be first made for the taking thereof according to law.

(6) That as to the two several suits against Adolph E. Schmidt and others the *locus in quo* is covered by the description of the deed from the Hoboken Land & Improvement Company to the New York Floating Dry-dock Company, dated August 31, 1872; and also within the grant from the state, by its commissioners, under the provisions of the fourth section of the supplement to the act entitled "An act to ascertain the rights of the state and of the riparian owners," etc., to Frederick Kuhne, trustee, etc., under whom the defendants hold by mesne conveyances, and that they are entitled to retain the possession and ownership of said premises against the plaintiff until the same is condemned, and payment therefor made according to law.

(7) That, as to the several suits against the Hamburg-American Steampacket Company and the North German Lloyd Steam-ship Company, the *locus in quo* is within the grant from the state of New Jersey to the Hoboken Land & Improvement Company, of the date of December 21, 1869, and also of the deed of conveyance from the Hoboken Land & Improvement Company to the North German Lloyd Steam-ship Company, dated April 23, 1872; and that the said defendants are entitled to hold the said premises clear and discharged of any right or claim therein or thereto by said plaintiff.

(8) That none of the land and premises claimed by the plaintiff in either of

the said several suits are subject to an easement in consequence of the dedication of public streets made by Col. John Stevens in the Loss map of 1804.

(9) That the several defendants in the several suits should be adjudged not guilty.

---

Soil under navigable rivers and arms of the sea, including the shore to high-water mark, belonged at common law, to the king, in trust for his subjects, and could not be granted to an individual. See *Lansing* v. *Smith*, 4 Wend. (N. Y.) 9, (21 Amer. Dec. 89;) 4 Cal. 441; *Chapman* v. *Kimball*, 9 Conn. 38, (21 Amer. Dec. 707;) and *Arnold* v. *Mundy*, 10 Amer. Dec. 356, to which last-cited case will be found a very complete and full note discussing the whole subject of the ownership in land adjoining navigable rivers, etc. But, as between the owner of adjacent fast land and an intruder, the right to land between high and low water mark is in the former. See *Ball* v. *Slack*, 2 Whart. 508, following *Blundel* v. *Cotterell*, 5 Barn. & Ald. 268. See, also, on general subject, *Carson* v. *Blazer*, 4 Amer. Dec. 463; *Storer* v. *Freeman*, Id. 153, and note; and particularly the notes to *Ball* v. *Slack, supra*, as reported in 30 Amer. Dec. 278.

As to the right of a city to extend its streets to the water front, see *Hoboken Land & Improvement Co.* v. *Hoboken*, reported in 7 Vroom, (36 N. J. 540,) in which the court held that an act of the legislature incorporating a land and improvement company and authorizing it to fill up, occupy, possess, and enjoy all land covered with water fronting and adjoining lands that might be owned by the corporation, and to construct thereon wharves, piers, and the like for shipping and commercial purposes, will not extinguish the public right of access to the navigable waters by a street on land purchased by the company, which, by the dedication, terminated at the high-water line as it was when the dedication was made. S. E. HALL.